IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARY R. SMITH,<br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br>Defendant. | §<br>§<br>§<br>§<br>§   CIVIL ACTION NO. H-09-709<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER GRANTING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 13), Defendant's Motion for Summary Judgment (Document No. 14), and Memorandum in Support (Document No. 15). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 13) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 14) is DENIED, and the matter is REMANDED for further proceedings.

---

[1] On May 27, 2009, the parties consented to proceed before the undersigned Magistrate Judge. Upon consent, this case was transferred to the Magistrate Judge for all proceedings. (Doc. No. 9).

## I. Introduction

Plaintiff Mary R. Smith ("Smith") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Smith argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, and that the ALJ, Janis Estrada, erred by ruling that Smith's depression was not severe. Smith seeks an order reversing the Commissioner's decision and awarding benefits, or in the alternative, remanding her claims for further proceedings. In contrast, the Commissioner contends there is substantial evidence in the record to support the ALJ's decision and the decision comports with applicable law, and should thus be affirmed. Namely, the Commissioner asserts the ALJ properly determined Smith retained the ability to perform her past relevant work as a home health aide and janitorial services supervisor and was therefore not disabled within the meaning of the Act.

## II. Administrative Proceedings

On December 15, 2005, Smith applied for DIB and SSI, claiming that she has been unable to work since November 18, 2003, due to hypertension, depression, knee and low back pain, and gastro-intestinal problems. (Tr. 126-29, 163-66).[1] The Social Security Administration denied her applications at the initial and reconsideration stages. (Tr. 119-22, 126, 136-52). After that, Smith requested a hearing before an ALJ. (Tr. 153). The Social Security Administration granted her request and the ALJ held a hearing on June 19, 2007. (Tr. 153).

---

[1] "Tr." refers to the transcript of the administrative record.

The objective medical evidence showed that Smith has complained of and been treated for knee and low back pain, gastro-intestinal problems, hypertension, and depression.

Smith testified she experienced low back pain and bilateral knee pain, more on the right than the left. (Tr. 18-19). On May 23, 2007 Smith was medically examined by Dr. Mihir Parikh and it was determined that Smith had limited bending of the knees and rolling of the neck, was unable to raise her arms above her head, had a negative straight leg test, 5/5 strengths, and no point tenderness over her spinal processes. (Tr. 90, 286). At a follow up appointment on July 6, 2007, Smith underwent a bone mineral densitometery using a lunar DPX IQ dual energy X-ray absorptiometer at the Lyndon B. Johnson General Hospital. (Tr. 333). This is a bone density examination that revealed Smith has osteopenia of the L1-L4 lumbar spine with a T-score of 1.4. (Tr. 333). On August 1, 2007 Smith underwent an X-ray of her right knee which returned results of knee pain and swelling, mild degenerative changes in the medial and anterior compartments, small juxta-articular spurs, prominent tibial spines, and no joint effusion. (Tr. 54, 318).

With respect to her gastro-intestinal problems, on April 28, 2005, Smith underwent a colonoscopy to determine the extent of the problems. (Tr. 234). The results showed that the examined portion of the cecum, ascending colon, transverse colon, descending colon, sigmoid colon, and rectum were entirely unremarkable. (Tr. 235). Also, there were no polyps, mass lesions, or mucosal abnormalities noted, and the retroflexion in the rectum demonstrated no abnormalities. (Tr. 235).

With respect to her hypertension, Smith was evaluated on August 1, 2007, during her appointment with Dr. Mihir Parikh. (Tr. 316). Dr. Parikh noted that Smith indicated she was feeling well and denied any symptoms referable to her elevated blood pressure. (Tr. 52, 316). Specifically, Smith denied chest pain, palpitations, dyspnea, orthopnea, PND, and peripheral

edema. (Tr. 52, 316). Dr. Parikh also noted Smith was alert, had no apparent stress, was cooperative, there was no clubbing, cyanosis, or edema in her extremities, and there was no crepitus noted in Smith's knees. (Tr. 52, 316). As a result of the examination, Dr. Parikh diagnosed Smith with a bone and cartilage disorder and noted there was unspecified pain in Smith's joint, lower leg. (Tr. 50, 314).

With respect to her depression, Smith underwent approximately eight[2] counseling sessions and received outpatient treatment at Acres Home Community Health Clinic with Counselor Brian Needham. During these sessions Smith attended a depressed women's group where she complained of feeling depressed. Among other things, Smith complained of feeling depressed because of the grief process associated with the loss of her brother in 2006 to cancer, her house burning down in 2001, having trouble saying "no" to others, struggling to set boundaries with family and friends, continued symptoms of sadness, loss of interest, feelings of unworthiness, poor sleep without medication, and auditory hallucinations of her recently deceased brother calling her name. (Tr. 64, 98, 99, 294, 295, 328). Smith reported that she had been taking Zoloft to help her sleep at night. (Tr. 64, 328). As a result of these sessions, Mr. Needham diagnosed Smith with Major Depressive Disorder (MDD). However, because Smith gave positive feedback to other group members and said that she was coping with her depressive symptoms with breathing/muscle relaxation exercises, sitting in her swing, attending church, and going to a women's group, saying "It helps to listen to other's talk about their problems; you know you are not alone," the only things Mr. Needham continuously prescribed Smith were Zoloft to help her sleep, and recommendations to continue attending group therapy.

---

[2] March 21, 2007 (Tr. 99, 295), April 11, 2007 (Tr. 98, 294), May 23, 2007 (Tr. 87, 283), May 30, 2007 (Tr. 86, 282), June 7, 2007 (Tr. 64, 328), June 13, 2007 (Tr. 62, 326), June 28, 2007 (Tr. 61, 325), July 25, 2007).

During Smith's group sessions Mr. Needham also performed a medical assessment of Smith's ability to perform mental work-related activities on June 12, 2007. (Tr. 298). Mr. Needham found that Smith's symptoms were improving until the death of her brother in 2006 and once again diagnosed Smith with MDD. (Tr. 298). However, Mr. Needham found that Smith has the ability to understand, remember, and carry out detailed but not complex job instructions and she scored at least "fair" in all categories related to making personal social adjustments. (Tr. 299).

During these sessions with Mr. Needham, Smith visited Dr. Michael J. Barber once on June 29, 2007. (Tr. 59, 323). After the assessment, Dr. Barber diagnosed Smith with recurrent major depression and severe generalized anxiety disorder. (Tr. 67, 323). Dr. Barber ordered Smith's prescription of Zoloft to be increased from 50 mg tables to 100 mg tablets. (Tr. 323).

Finally, also testifying at the hearing was a vocational expert, Herman Litt. Litt testified that Smith's prior work as a home health aide is medium in exertional level and at the lower end of the semi-skilled range, and Smith's prior work as a janitorial services supervisor is medium in exertional level and skilled. (Tr. 32). On January 31, 2008, the ALJ issued her decision finding Smith not disabled. (Tr. 126-135). The ALJ found that Smith met the insured status requirements of the Social Security Act, had not engaged in substantial gainful activity, had the following severe impairments: osteopenia of the lumbar spine and mild arthritis of the right knee, but further found that none of Smith's impairments or combinations of impairments met or medically equaled one of the listed impairments. (Tr. 128-30). The ALJ further found that Smith had the residual functional capacity ("RFC") to perform the full range of medium work, which is defined as lifting and carrying 50 pounds occasionally, lifting and carrying 25 pounds frequently, sitting about 6 hours in an 8-hour work day, and standing/walking about 6 hours in an

8-hour work day with typical work-day breaks of 15 minutes in the morning and 15 minutes in the afternoon and a 1-hour lunch break. (Tr. 131). Based on Smith's RFC, and the testimony of the vocational expert,[3] the ALJ opined that Smith could perform her past relevant work as a home health aide and janitorial services supervisor. (Tr. 134). Therefore, the ALJ found that Smith has not been under a disability from November 13, 2003, the alleged onset date.

Smith then filed a request for review by the Appeals Council on April 2, 2008. (Tr. 45-48). Smith argued that the ALJ's decision contained errors of law and was not supported by substantial evidence. (Tr. 47). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. The Appeals Council denied Smith's request for review on September 17, 2008, and the ALJ's decision became the Commissioner's final decision. (Tr. 38-42). Smith has timely filed this civil action in which the Court has jurisdiction pursuant to 42. U.S.C. § 405(g).

---

[3] The vocational expert testified as follows:
ALJ: Okay. If I find that the claimant retains the ability to, exertionally to lift up to 50 pounds occasionally and 25 pounds frequently, and be on her feet for six of eight hours, and be able to sit for six of eight hours in a typical workday where there is a 15-minute break in the morning and a 15-minute break in the afternoon and a lunch hour, and would not have any other restrictions or limitations due to a medically-determinable impairment, and that the claimant's mental impairment is non-severe and would not impose any work-related restrictions on the ability to function due to the nature of the mental impairment as being controlled or controllable by appropriate medication, do you have an opinion regarding whether the claimant would be able to perform any of her past relevant work?

VE: She would be able to perform all of her past relevant work, Your Honor. (Tr. 32).

The Commissioner has filed a Motion for Summary Judgment (Document No. 14), and a Memorandum in Support thereof. (Document No. 15). Smith has filed a Motion for Summary Judgment (Document No. 13). This appeal is now ripe for ruling. The evidence is set forth in the transcript, pages 1 through 333. (Document No. 6). There is no dispute to the facts contained therein.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not ". . . reweigh the evidence or substitute its judgment . . ." for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richards v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of

engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Anthony*, 954 F.2d at 293; see also *Leggett v. Chater*, 67 F.3d 558, 564 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F3d. 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

The ALJ concluded at step two, based on the medical evidence, that Smith had two severe impairments: osteopenia of the lumbar spine and mild arthritis of the right knee. The ALJ wrote:

9

The medical evidence shows that the claimant experienced low back and bilateral knee pain, more on the right than the left. She underwent bone density studies on July 6, 2007, which revealed osteopenia of L1-L4 lumbar spine and x-rays of the right knee on August 1, 2007, which revealed mild degenerative changes in the medial and anterior compartments. Treatment records received from Acres Home Community Health Clinic indicate that she was conservatively treated with medication. On examination, she had limited range of motion of the spine and knees; however, straight le[g] test was negative and she had 5/5 strength and no point tenderness over the spinal process. (Exhibits 9F, 11F/5, 8)[.]

The claimant has also complained of other conditions such as gastro-intestinal problems, hypertension, and depression. Considering the claimant's treatment history, the objective clinical findings, the observations and comments of her treating sources, the assessments of the State agency medical consultants, the claimant's hearing testimony, and all of the evidence of record considered as a whole, the undersigned finds that these conditions have only resulted in mild restriction in the ability to perform work-related activities. Diagnostic work-up of the gastro-intestinal problems and hypertension do not reveal significant problems and they are well controlled with treatment. For example, [a] colonoscopy performed on April 28, 2005 showed normal findings (Exhibit 3F/1-4) and treatment records indicate that the claimant was feeling well, denying any symptoms referable to her elevated blood pressure. Specifically, she denied chest pain, palpitations, dyspnea, orthopnea, PND, and peripheral edema. (Exhibit 11F/11).

The claimant also asserts being disabled due to depression related to a house fire and the death of a brother in 2006. Her hearing testimony reveals that she takes Zoloft in the evening and participates in group meetings for the depression. She also sees a counselor but asserts having continued poor sleep, auditory hallucinations, and social withdrawal. She does not feel worthy and experiences great sadness. She has decreased energy due to back pain and often cries uncontrollably and, is unable to sleep because she hears her deceased brother's voice. She has little patience with other people and does not like to be around others. Her problems with sleep are alleviated with the Zoloft.

Similar to the gastro-intestinal problems and hypertension, the depression is well controlled with group therapy and medication (Zoloft) prescribed by her primary care doctor. She complains of recurring symptoms (decreased interest, anhedonia, guilt, decreased energy and concentration, difficulty relating to people, and occasional auditory hallucinations of a deceased brother), but has not required hospitalization for the depression or received treatment from a specialist such as a psychologist or psychiatrist. All treatment has been rendered by a general practitioner and her counselor and, she reports being able to cope with her symptoms with breathing/muscle relaxation exercises, exercise, sitting on her swing, attending church, and attending group therapy. She complains of having very poor sleep, but only requires one Zoloft in the evenings. The fact that she

only requires a single dose of her medication in the evenings to help her sleep and requires no other medication for the depression indicates that the treatment has been successful in controlling her symptoms.

The undersigned also notes that, despite the asserted depressive symptoms, the claimant does not have significant limitations with activities of daily living. She watches television ("Dancing with the Stars" and "The Price is Right"), goes out to dinner occasionally with her daughter, performs housework such as dusting (see also Exhibit 6E/2), reads the newspaper and her Bible, drives to church and the store, and has taken trips to Mobile, Alabama since 2003. For the reasons set forth, the undersigned concludes that the depression only causes mild restriction of activities of daily living, mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

The gastro-intestinal problems, hypertension, and depression do not impose more than a slight limitation on the claimant's ability to perform basic work related activities. Therefore, they are not severe impairments. In arriving at this conclusion, the term "severe," as defined in the regulations, has been given the same construction as that pronounced by the Court of Appeals for the Fifth Circuit. Stone v. Heckler, 752 F.2d 1009 (5th Cir. 1985). (Tr. 128-30).

The Court must determine whether the ALJ erred in concluding that Smith's depression is not severe.

In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit discussed step two of the sequential evaluation process and opined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). The regulations provide "an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The ALJ "must consider the combined effects of all impairments, without regard to whether any such impairment, if

11

considered separately, would be of sufficient severity." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999); 20 C.F.R. § 404.1523.

  Smith contends that the ALJ erred in ruling that her depression was not severe. The prevailing standard set forth in *Stone* applies in the Fifth Circuit. Even though the ALJ states that she is following the Fifth Circuit's decision in *Stone*, the substance of the decision suggests otherwise. For instance, in *Scroggins v. Astrue*, 598 F. Supp. 2d 800 (N.D. Tex. Jan 27, 2009), the ALJ cited to the *Stone* standard but applied a incorrect standard. In *Scroggins*, the ALJ concluded that impairments were not severe because they ". . . would have no more than a minimal effect on an individual's ability to work." *Id*. at 800. Here, the ALJ concluded that Smith's depression does not ". . . impose more than a slight limitation on the claimant's ability to perform basic work related activities." (Tr. 129). *Stone* holds that a severe impairment "would *not* be expected to interfere with the individual's ability to work." 752 F.2d at 1101 (emphasis added). Under *Stone*, a non-severe impairment is not expected to interfere with the individual's ability to work. The ALJ's interpretation allows a finding of non-severe even where there is a "slight" effect on Smith's ability to work. *See also Rangel v. Astrue*, 605 F. Supp. 2d 840, 850-51 (W.D. Tex. Mar. 6, 2009). Because this Court is bound to follow *Stone*, and given clear instructions by the Fifth Circuit to remand a matter in which *Stone* is not followed at step two, the matter must be remanded. *See Loza v. Apfel*, 219 F.3d 378, 393, 398-99 (5th Cir. 2000). Accordingly, the matter should be remanded to the Commissioner for proceedings consistent with this Memorandum.

## V. Conclusion

  Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner did not properly follow the applicable case law at step two. Based on this

12

13

infirmity in the ALJ's opinion, substantial evidence does not support the ALJ's decision. Therefore, the Court

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 13) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 14) is DENIED, and the matter is REMANDED to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 6th day of July, 2010.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE